**UNITED STATES of America**

v.

**Jose HERNANDEZ–OCHOA.**

No. C.R.04–31L.

United States District Court,
D. Rhode Island.

Dec. 1, 2004.

Zechariah Chafee, Esq., U.S. Attorney's Office Fleet Center, Providence, RI, for Plaintiff.

Edward C. Roy, Jr., Federal Defender's Office, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

Jose Hernandez–Ochoa ("Defendant") was indicted pursuant to 8 U.S.C. § 1326 (2004), for illegal reentry into the United States after deportation. In separate motions, Defendant seeks to dismiss the indictment on the grounds that (1) the Government has failed to establish an essential element under the statute, namely that Defendant was lawfully deported; and (2) that pursuant to the United States Supreme Court's holding in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the question of Defendant's eligibility for deportation that underlies the indictment should have been submitted to a jury and proven beyond a reasonable doubt. For the reasons set forth below, both motions are denied.

## BACKGROUND

On November 2, 1994, Defendant entered a plea of *Nolo Contendere* to and thus was convicted of, assault with a dangerous weapon in Rhode Island Superior Court.[1] He was sentenced to fifteen

---

1. *State of Rhode Island v. Jose Medina,* P2– 1994–1984A. Defendant Apparently used

years, with four to serve, the balance suspended with probation. Defendant had been charged with three crimes all of which he committed on the same date against the same victim, one James Potter. After negotiation among Defendant, his attorney and the R.I. Attorney General's office, Defendant agreed to plead to assault with a dangerous weapon. He entered a *Nolo* plea(which is the equivalent of a guilty plea in State Court)and was sentenced.

Upon completion of the four-year incarceration portion of his fifteen-year sentence, the government commenced deportation proceedings against Defendant. On April 15, 1997 a deportation hearing was held[2] and in a decision from the bench the immigration judge ordered Defendant deported stating:

> Well, I find you deportable, sir, because you were convicted of an assault ... with a deadly weapon, a knife, and there's substantial risk, and a good chance, that ... some injury would follow ... you're not eligible for any relief from deportation over five years. And the only order in your case will be to be deported to El Salvador.

The record shows that subsequent to issuing the order, the immigration judge informed Defendant that he had the right to appeal the decision. The judge explained the appeal process, noting that Defendant had the right to have his case reviewed by the "appeals board in Washington, D.C.". The judge went on to explain that Defendant had thirty days in which to file the appeal.

In response to the judge's query, Defendant answered that he did wish to appeal the decision, stating through an interpreter "I'd like to appeal, yes." The judge responded: "All right, I'll give you the appeal papers. If you cannot pay the money for the appeal, file the papers, mail it with the appeal ... and the appeal forms. All the instructions are on here. The appeal papers, you have to mail it to Washington, D.C." Despite Defendant's stated intention to appeal, the immigration judge noted in his papers that Defendant waived his appeal. Regardless of the judge's notation, and Defendant's statement to the contrary, nothing in the record indicates that Defendant did, in fact, subsequently file his appeal papers; and when the filing deadline for his appeal expired on May 15, 1997 Defendant was deported to his native El Salvador.

What became of Defendant subsequent to his deportation is unknown to this Court. However, the record indicates that Defendant was re-incarcerated in December of 2003[3], and in February of 2004 Defendant was indicted in this matter. In pertinent part, the indictment reads:

> On or about February 5, 2004, Defendant Jose Hernandez–Ochoa, a/k/a Jose Medina and Joaquin Diaz, an alien who had previously been deported from the United States, knowingly entered and was found in the District of Rhode Island without having obtained the express consent of the Attorney General of the United States to reapply for admission into the United States; in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

---

multiple alias, among them Jose Medina.

**2.** *In the Matter of: *S–Herndandez–Ochoa, Jose*, A94–124–952 (April 15, 1997).

**3.** In the Financial Affidavit that accompanies Defendant's request for appointment of a Public Defender, Defendant states that his last date of employment was December 15, 2003 and that he had been incarcerated since December of 2003.

A warrant for Defendant's arrest on the indictment was issued on March 3, 2004 and Defendant was arraigned before Magistrate Judge David Martin on March 10, 2004 pursuant to Rule 10 of the Federal Rules of Criminal Procedure. On that same date, Defendant applied for and received Appointment of a Federal Public Defender. On March 22, 2004, Judge Martin ordered Defendant detained pending trial. A trial date was set for May 4, 2004, however, counsel for both Defendant and the Government agreed to continue the matter, allowing Defendant additional time to prepare the instant motions.

### THE FIRST MOTION TO DISMISS

In his first Motion to Dismiss, Defendant challenges the indictment on the grounds that his request to appeal the immigration judge's decision in his initial deportation proceeding was not processed. Defendant argues that the failure to process his appeal deprived him of judicial review of the immigration judge's decision to deport him. Because Defendant relies on an alleged procedural defect in the deportation proceeding, there is no question but that this motion is a collateral attack on the validity of the immigration judge's order. Indeed, both parties agree that this motion is controlled by 8 U.S.C. § 1326(d), which lays out three elements, each of which Defendant must prove in order to mount a successful collateral attack on an underlying deportation order. The statute reads in pertinent part:

... In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (2004).

Relying on the immigration hearing transcript, Defendant argues that his statement during the hearing that he intended to appeal the order coupled with the judge's contradictory notation that he waived his appeal, is sufficient to establish the first two elements of § 1326(d). This Court disagrees.

The record clearly shows that at the deportation hearing, Defendant was provided with the paperwork necessary to file an appeal with the appropriate appeals board. The judge clearly instructed Defendant to mail the forms to Washington D.C. and noted that the filing fee would be waived if Defendant was unable to pay it.

More importantly, the record is equally clear that Defendant's appeal papers were never filed. It is evident that Defendant, in attempting to show that he exhausted his administrative remedies as required in 1326(d)(1), relies on nothing more than his statement that he intended to appeal the order. In light of this paucity of support, the undersigned concludes that Defendant's statement alone is insufficient to satisfy the exhaustion element of the controlling statute.

Moreover, Defendant fails to meet his burden under § 1326(d)(2). Defendant points to a notation on the order of the immigration judge that says that he waived his appeal. However, just below the notation it states that the appeal is due by May 15, 1997. While this apparent contradiction between a waiver of and a due date for filing of an appeal is somewhat confusing, this Court concludes that

given Defendant's ultimate failure to actually file appeal papers, the confusing notation is simply insufficient foundation upon which to construct an argument that Defendant was "improperly deprived ... of the opportunity for judicial review ..." Defendant was not prevented from filing an appeal by the incorrect notation on the bottom of the deportation order and there has been no showing that Defendant filed his appeal and had it denied as a result of the notation.

Therefore, Defendant has failed to prove the first two of the three elements for successful invocation of § 1326(d). Defendant has not made an adequate showing that he attempted to exhaust his remedies as required by § 1326(d)(1) nor has he shown that he was improperly deprived of judicial review of his deportation as required by § 1326(d)(2). That concludes the inquiry. Defendant's first Motion to Dismiss is denied.

## THE SECOND MOTION TO DISMISS

■ Defendant has filed a second motion to dismiss based upon the Supreme Court's holding in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In relying on *Blakely*, Defendant seeks dismissal of the indictment on the grounds that the basis for his 1997 deportation order was not submitted to a jury and proven beyond a reasonable doubt.

This Court concludes, however, that Defendant's attempt to apply *Blakely* to this current indictment stretches its holding well beyond even its most far-reaching application. In *Blakely*, the Supreme Court applied the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to invalidate a sentencing enhancement imposed pursuant to Washington state law that increased the sentencing beyond the range authorized by Washington's statutory sentencing guidelines regime. The Court ruled that because the facts upon which the trial judge relied to support the enhancement were neither admitted by the defendant nor found by a jury, the sentence violated the defendant's right to a trial by jury pursuant to the Sixth Amendment of the Constitution of the United States, *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537.

This Court further notes that *Blakely* addresses *sentencing enhancements* and is in no way applicable to the present case. *Blakely* provides no support for Defendant's argument that all of the *elements* of the instant offense must have been supported by proof beyond a reasonable doubt and must have been submitted to a jury at the previous proceeding.

In fact, Defendant's motion does not in any manner address the intended application of *Blakely* (sentencing enhancements) but rather seeks to stretch it to new territory. This Court, as yet unconvinced that the Supreme Court intended that *Blakely* apply even beyond the Washington scheme to the Federal Guidelines is not prepared to further extend its application. Therefore, it is the conclusion of this Court that the indictment easily withstands this attack predicated, as it is, on Defendant's creative use of the *Blakely* holding.

Lastly, even if this Court were to accept Defendant's assertion that his prior deportation is being treated as a sentencing factor, *Blakely* still would not apply. As the Court stated: "[This] case requires us to apply the rule we expressed in *Apprendi v. New Jersey: Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 124 S.Ct. at 2536 (emphasis added).

Defendant admitted to and was sentenced for an aggravated felony. At his deportation hearing, he reaffirmed that conviction and was subsequently deported pursuant to 8 U.S.C. § 1326. Therefore, the prior conviction at issue here was admitted to *twice* and did not have to be proved at the immigration hearing, and it does not have to be re-proven in this matter. The indictment stands. Defendant can take heart from the fact that his Sixth Amendment right remains inviolate. This case will go forward, he will still have a right to trial, and; pursuant to the Sixth Amendment, the government will have to prove each of the elements of the offense to a jury, beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, Defendant's Motions to Dismiss the indictment are denied.

It is so ordered.